**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| **DONACIANO SALINAS LOPEZ AND IMELDA HINOJOSA LOPEZ,** Plaintiffs, | |
| **v.** | **CIVIL ACTION NO. 7:25−cv−00067** |
| **MERAKI SOLAR, LLC., SOLCIUS LLC., KARLA TREVINO, AND GOODLEAP, LLC,** Defendants. | |

**DEFENDANT GOODLEAP, LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED PETITION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(3) AND 12(b)(1) AND MOTION TO COMPEL ARBITRATION**

Defendant GoodLeap, LLC ("GoodLeap") submits its Motion to Dismiss Plaintiffs Donaciano Salinas Lopez and Imelda Hinojosa Lopez's ("Plaintiffs") First Amended Petition (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(1) and Motion to Compel Arbitration. For the reasons set forth below, GoodLeap respectfully requests this Court grant its Motion, dismiss Plaintiffs' First Amended Petition, and compel Plaintiffs' claims to arbitration.

## I. SUMMARY OF ARGUMENT

1. Plaintiffs entered into a binding and enforceable Loan Agreement with Loanpal, LLC ("Loanpal") on July 29, 2020, which contains an arbitration provision. *See* Loan Agreement, a true and correct copy of which is attached as Exhibit A-1 to Exhibit A, the Declaration of Maria Mellott. On June 2, 2021, Loanpal changed its name to GoodLeap, LLC.[1] *See* Amendment to Registration, a true and correct copy of which is attached as Exhibit A-2 to Exhibit A, the Declaration of Maria Mellott.

[1] References herein to GoodLeap shall necessarily include Loanpal.

2. Plaintiffs agreed that in the event of any dispute, claim, or controversy arising from the Loan Agreement, the parties would submit to a binding arbitration administered by JAMS. *See* Ex. A-1, at § 15. GoodLeap respectfully requests that this Court dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(3), because this is an improper venue, or alternatively, under Federal Rule of Civil Procedure 12(b)(1), because this Court lacks subject-matter jurisdiction. Pursuant to the Loan Agreement, the only proper venue for Plaintiffs to litigate their claims against GoodLeap is with JAMS, so this Court is an improper venue and lacks subject-matter jurisdiction to hear Plaintiffs' claims.

## II. PROCEDURAL AND FACTUAL BACKGROUND

3. The parties entered into the Loan Agreement on July 29, 2020. *See* Exhibit A-1; *see also* Ex. A, at ¶ 4. The Loan Agreement financed solar panels and installation services Plaintiffs purchased from Solcius, LLC ("Solcius"). *See* Purchase Agreement, a true and correct copy of which is attached as Exhibit A-3 to Exhibit A, the Declaration of Maria Mellott; *see also* Ex. A, at ¶ 5. Indeed, on or about August 3, 2020, Plaintiffs executed a Purchase Agreement for solar system installation with Solcius memorializing the terms of their agreement (the "Purchase Agreement"). *See* Exhibit A-3; *see also* Ex. A, at ¶ 5.

4. In the event a potential customer expresses interest in moving forward with financing the purchase of a home solar system, the customer has the ability to complete an application for financing via GoodLeap's internet-based application process. As a part of that application process, GoodLeap obtains a primary email address to facilitate communication and the sharing of documents and information and, for the purposes of determining whether the customer qualifies for the loan, the customer provides personal identifiable information, including,

among other items of information, address, date of birth, and the last four digits of the customer's Social Security number. *See* Ex. A, at ¶ 6.

5. If the application for financing is approved, GoodLeap then transmits to the customer's email address any key information and documents, including their proposed individualized financing terms. *See* Ex. A, at ¶ 7.

6. After a potential customer receives that information, if he or she is satisfied with the proposed terms of the Loan Agreement, the customer can click a link within the subject email to proceed to the signing of the Loan Agreement. GoodLeap will then transmit the Loan Agreement to the customer provided email address for signature via DocuSign. The customer is then presented with the Loan Agreement for review and electronic signature. *See* Ex. A, at ¶ 8.

7. Documents transmitted via DocuSign can only be opened by an individual with access to the customer provided e-mail address. *See* Ex. A, at ¶ 9.

8. Once the Loan Agreement is signed, GoodLeap receives a DocuSign certificate for each Loan Agreement executed via DocuSign. The DocuSign certificate records the date and time of the execution of the Loan Agreement document by the customer, among other key information. *See* Ex. A, at ¶ 10.

9. After a customer has executed the Loan Agreement, the customer receives executed versions of same for their records through DocuSign. The executed copies are transmitted to the customer-provided email address and can only be accessed there. The same process described herein applied when GoodLeap was operating under the Loanpal name. *See* Ex. A, at ¶ 11.

10. The Loan Agreement in this case was executed by Plaintiffs via DocuSign on July 29, 2020. The email address associated with Plaintiffs' DocuSign signature is Imeldah2410@gmail.com. *See* DocuSign Certificate of Completion, a true and correct copy of

which is attached as Exhibit A-4 to Exhibit A, the Declaration of Maria Mellott; *see also* Ex. A, at ¶ 12.

11. The Loan Agreement contains the following dispute resolution provision, which requires the parties to arbitrate their disputes:

15. ACUERDO DE ARBITRAJE. Todas las reclamaciones y disputas que surjan de o en relación con este Contrato (en adelante, la(s) "Disputa(s)") serán resueltas por arbitraje vinculante de forma individual. El árbitro también decidirá cualquier asunto relacionado con la elaboración, validez, aplicación o alcance de este acuerdo de arbitraje, susceptibilidad de arbitraje, defensas frente a arbitraje incluyendo la existencia de secciones abusivas, o la validez del juicio por jurado, renuncia a demanda colectiva o demanda por representante grupal (en conjunto, problemas de "posibilidad de arbitraje"). POR MEDIO DEL PRESENTE USTED RENUNCIA A CUALQUIER DERECHO CONSTITUCIONAL Y POR DISPOSICIÓN DE LEY A ACUDIR AL TRIBUNAL Y TENER UN JUICIO CON JURADO. IGUALMENTE, A MENOS QUE USTED SE EXCLUYA DEL ARBITRAJE, TAMBIÉN ACEPTA RENUNCIAR A CUALQUIER DERECHO DE ENTABLAR O PARTICIPAR EN UNA DEMANDA GRUPAL O COLECTIVA EN JUICIO O EN ARBITRAJE. El árbitro tendrá la autoridad de otorgar cualquier indemnización, incluyendo las medidas cautelares, que estén disponibles en virtud de la legislación aplicable. Cada parte deberá asumir los gastos de su propio abogado, expertos, testigos y preparación y presentación de pruebas. Sin embargo, el árbitro puede otorgarle honorarios y costos de abogados razonables si esto está expresamente autorizado por la legislación aplicable. Previa petición de ello, pagaremos una porción de los honorarios y gastos del árbitro y los honorarios y gastos administrativos del arbitraje. El árbitro deberá emitir un laudo escrito que describa las conclusiones esenciales que respaldan el laudo. Todas las audiencias en el arbitraje se llevarán a cabo dentro del distrito judicial federal donde está ubicada la Residencia; el laudo del árbitro será definitivo y puede registrarse sentencia sobre el mismo ante el Tribunal de Distrito federal. El arbitraje será administrado por JAMS conforme a sus Reglas de Arbitraje Simplificadas (las "Reglas"). Podrá solicitaré a JAMS una copia de las Reglas de Arbitraje Simplificadas JAMS en la dirección https://www.jamsadr.com/rules-streamlined-arbitration o al (800) 352-5267. El árbitro será elegido del panel de neutrales de JAMS y será un juez federal retirado, un juez de apelación estatal retirado o un juez de instrucción retirado (en ese orden de preferencia). Usted acepta que nosotros o nuestras filiales, subsidiarias o entidades matrices y (g) cada uno de sus ejecutivos, directores, empleados y agentes podemos exigir el cumplimiento de este acuerdo de arbitraje. Este acuerdo de arbitraje se celebra conforme a una transacción que involucra el comercio interestatal. La Ley Federal de Arbitraje (Federal Arbitration Act, FAA) (art. 1-16, cap. 9 del Código de los Estados Unidos [United States Code, U.S.C]) regirá este acuerdo de arbitraje incluyendo todos los asuntos de susceptibilidad de arbitraje. Ninguna ley estatal relativa a asuntos de susceptibilidad de arbitraje regirá este acuerdo de arbitraje. Sujeto a lo anterior y sin limitar su alcance, la legislación federal se aplicará a todos los otros asuntos que surjan en virtud de la ley federal y la ley estatal aplicable conforme se establece en la sección 14 anterior se aplicará a todos los otros asuntos que surjan en virtud de la legislación estatal (sin tomar en consideración las normas de derecho aplicable de un estado). USTED PUEDE EXCLUIRSE DEL ARBITRAJE ENVIÁNDONOS UNA NOTIFICACIÓN POR ESCRITO DENTRO DE 15 DÍAS DE LA FIRMA DEL ACUERDO INDICANDO QUE USTED DESEA "EXCLUIRSE DEL ACUERDO PARA ARBITRAR DISPUTAS". LA NOTIFICACIÓN DE EXCLUSIÓN DEBE ENVIARSE A LA SIGUIENTE DIRECCIÓN: LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661. Si usted no se excluye, pero no es posible exigir el cumplimiento de alguna parte o partes de su acuerdo de arbitraje, entonces Loanpal y usted aceptan que dicha parte o partes especificas no tendrá ninguna vigencia o validez y será retirada, pero el resto de este acuerdo de arbitraje conservará su plena vigencia y validez. No obstante, si la totalidad del acuerdo de arbitraje o su renuncia al derecho de participar en demandas colectivas, de representación grupal o de arbitraje de reclamaciones de medidas cautelares no es aplicable entonces el acuerdo de arbitraje no tendrá vigencia ni validez alguna.

REFERENCIA JUDICIAL PARA PRESTATARIOS EN CALIFORNIA. SI LA RESIDENCIA ESTÁ UBICADA EN CALIFORNIA Y USTED SE EXCLUYE DEL ARBITRAJE, LOANPAL Y USTED ACEPTAN QUE TODA DISPUTA SERÁ RESUELTA EN EL TRIBUNAL SUPERIOR PARA EL CONDADO MEDIANTE UN PROCEDIMIENTO DE REFERENCIA GENERAL (GENERAL REFERENCE) CONFORME AL ART. 638(a) DEL CÓDIGO DE PROCEDIMIENTO CIVIL DE CALIFORNIA (CALIFORNIA CODE OF CIVIL PROCEDURE, "CCP"). USTED RECONOCE Y ACEPTA QUE, EN UNA ACCIÓN DE REFERENCIA JUDICIAL, TODA CONTROVERSIA SERÁ CONOCIDA POR UN RÉFERI Y NO POR UN JUEZ Y JURADO DE TRIBUNAL SUPERIOR Y POR MEDIO DEL PRESENTE RENUNCIA A SUS DERECHOS CONSTITUCIONALES Y DE DISPOSICIÓN DE LEY A TENER UN JUICIO FRENTE A UN JUEZ Y JURADO. El Réferi será nombrado conforme al art. 640 del CCP en caso de no existir un acuerdo sobre la selección. El Réferi tendrá las mismas cualificaciones del árbitro. Previa petición de ello, Loanpal pagará su porción de los honorarios y gastos del Réferi.

SIN PERJUICIO DE CUALQUIER ELEMENTO EN CONTRARIO DEL PRESENTE, SI LA RESIDENCIA SE ENCUENTRA EN CALIFORNIA Y USTED NO SE EXCLUYE DEL ARBITRAJE, PUEDE SOLICITAR UNA MEDIDA CAUTELAR PÚBLICA EN EL ARBITRAJE EN LA MEDIDA EN QUE LO PERMITA LA LEGISLACIÓN APLICABLE. SI, NO OBSTANTE, NO ES POSIBLE EXIGIR EL CUMPLIMIENTO DEL ARBITRAJE, TOTAL O PARCIALMENTE, ENTONCES LOANPAL Y USTED ACEPTAN QUE DICHAS CONTROVERSIAS SERÁN RESUELTAS EN EL TRIBUNAL SUPERIOR PARA EL CONDADO EN UN PROCESO DE REFERENCIA GENERAL DE CONFORMIDAD CON EL ART. 638(a) DEL CÓDIGO DE PROCEDIMIENTO CIVIL DE CALIFORNIA. USTED RECONOCE Y ACEPTA QUE, EN UNA ACCIÓN DE REFERENCIA JUDICIAL, TODA CONTROVERSIA SERÁ CONOCIDA POR UN RÉFERI Y NO POR UN JUEZ Y JURADO DE TRIBUNAL SUPERIOR Y POR MEDIO DEL PRESENTE RENUNCIA A SUS DERECHOS CONSTITUCIONALES Y DE DISPOSICIÓN DE LEY A TENER UN JUICIO FRENTE A UN JUEZ Y JURADO. El Réferi será nombrado conforme al art. 640 del CCP en caso de no existir un acuerdo sobre la selección. El Réferi tendrá las mismas cualificaciones del árbitro. Previa petición de ello, Loanpal pagará su porción de los honorarios y gastos del árbitro o el Réferi, según sea el caso, y su porción de cualquier cargo administrativo que pueda exigir el árbitro, réferi o JAMS.

Ninguna disposición de la sección 15 afectará el derecho de las partes a: (a) solicitar y obtener dicha reparación o recursos provisionales de los que de otra forma dispondrían a nivel judicial a la espera del nombramiento del árbitro o réferi (b) presentar su Controversia en tribunales de menores cuantías sobre una base individual, (c) ejercer dichos recursos de autoayuda que sean autorizados por ley o contrato, o (d) exigir la ejecución judicial que se establecen en la sección 9.

AL ESCRIBIR SUS INICIALES EN LA PARTE INFERIOR DE ESTA NOTIFICACIÓN USTED CERTIFICA QUE HA LEÍDO Y ACEPTA LA TOTALIDAD DE LA SECCIÓN 15.

Iniciales del Prestatario: DS IL Iniciales del aval: DS DL

COPY VIEW

Ex. A-1, at § 15.



4896-9047-2476v.1

12. The paragraph containing the arbitration provision is translated as follows:

> The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION. The arbitrator shall have the authority to award any relief, including injunctive relief, which is available under applicable law. Each party shall bear the expense of its own counsel, experts, witnesses and preparation and presentation of proofs. However, the arbitrator may award you reasonable attorney's fees and costs if this is expressly authorized by applicable law. Upon request, we will pay a portion of the fees and expenses of the arbitrator and the administrative fees and expenses of the arbitration. The arbitrator shall issue a written award describing the essential findings supporting the award. All hearings in the arbitration shall take place within the federal judicial district where the Residence is located; the arbitrator's award shall be final and judgment on the arbitrator's award may be entered by the federal District Court. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules (the "Rules"). A copy of the JAMS Streamlined Arbitration Rules can be obtained from JAMS at https://www.jamsadr.com/rules-streamlined-arbitration or (800) 352-5267. The arbitrator shall be selected from the JAMS panel of neutrals and shall be a retired federal judge, a retired state appellate judge, or a retired state trial judge (in that order of preference). You agree that this agreement to arbitrate may be enforced by us or our affiliates, subsidiaries, or parents, and (g) each of their officers, directors, employees, and agents. This arbitration agreement is made pursuant to a transaction involving interstate commerce. The Federal Arbitration Act (9 U.S.C. §§1-16) (the "FAA") shall govern this agreement to arbitrate including all arbitrability issues. No state law respecting arbitrability issues shall govern this agreement to arbitrate. Subject to and without limiting the foregoing, federal law shall apply to all other issues that arise under federal law and applicable state law as set forth in Section 14 above shall apply to all other issues that arise under state law (without reference to a state's choice of law rules). YOU MAY OPT OUT OF ARBITRATION BY SENDING US WRITTEN NOTICE WITHIN 15 DAYS OF SIGNING THE AGREEMENT STATING THAT YOU WISH TO "OPT OUT OF THE AGREEMENT TO ARBITRATE DISPUTES." THE OPT-OUT NOTICE SHOULD BE SENT TO THE FOLLOWING ADDRESS: LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661. If you do not opt out, but any part or parts of your agreement to arbitrate are unenforceable then Loanpal and you agree that such specific part or parts shall be of no force or effect and shall be severed, but the remainder of this agreement to arbitrate shall continue in full force and effect. If, however, the entire agreement to arbitrate or your waiver of the right to participate in class, representative or to arbitrate injunctive relief claims is unenforceable then the agreement to arbitrate shall be of no force or effect.

Ex. A, at ¶ 13.

13. Plaintiffs signed the contract and initialed under the arbitration agreement section. *See* Ex. A-1, at § 15.

14. The Loan Agreement provides in Section 15 that the parties waive any constitutional and statutory rights to go to court and have a trial in front of a jury. The parties agreed to submit to binding arbitration for "[t]odas las reclamaciones y disputas que surjan de o en relación con este Contrato . . . ." Ex. A-1, at § 15 ("[a]ll claims and disputes arising out of or in connection with this Agreement . . . .").

15. The parties also agreed that the arbitrator shall decide any issues relating to the making, validity, enforcement, or scope of the arbitration agreements, arbitrability, and defenses to arbitration. *See* Ex. A-1, at § 15. The Loan Agreement provides that the arbitration shall be conducted under JAMS Streamlined Arbitration Rules and the Federal Arbitration Act (9 U.S.C. §§ 1-16) and in the federal judicial district where the Plaintiffs' residence is located. *See* Ex. A-1, at § 15.

16. Plaintiffs filed their Original Petition in the 229th District Court of Starr County, Texas against Meraki Solar, LLC, ("Meraki"), Solcius, and Karla Trevino on January 11, 2024. Plaintiffs filed their First Amended Petition, adding GoodLeap as a defendant on December 23, 2024. Plaintiffs' First Amended Petition alleges claims against Defendants for breach of contract, promissory estoppel, fraud, negligent misrepresentation, conspiracy, holder in due course, fraudulent lien, respondeat superior, joint venture, and alleges violations of the Texas Deceptive Trade Practices Act, and Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"). GoodLeap was served with the First Amended Petition on January 16, 2025.

17. GoodLeap filed a notice of removal in this Court on February 14, 2025. GoodLeap then promptly filed a notice of the notice of removal in the state court. This case has not yet been set for trial.

18. GoodLeap requests that the Court dismiss Plaintiffs' Complaint and compel Plaintiffs to arbitrate this matter as required by the valid and enforceable arbitration provision in the Loan Agreement.

## III. ARGUMENT & AUTHORITIES

### A. Dismissal of claims subject to an arbitration clause pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(1).

19. Pursuant to Federal Rule of Civil Procedure 12(b)(3), complaints may be dismissed for improper venue; pursuant to Federal Rule of Civil Procedure 12(b)(1), complaints may be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), (3). While Circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum-selection or arbitration clause, the Fifth Circuit and courts in the Southern District of Texas have agreed that a motion pursuant to 12(b)(3) is a proper method for seeking dismissal in favor of arbitration. *See Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 (5th Cir. 2010) ("Because this court has accepted Rule 12(b)(3) as a proper method for dismissal and the parties do not address this issue, we need not decide which section applies to this kind of dismissal."); *see*, *e.g.*, *Rollins v. Red Hook Container Terminal*, No. 3:19-CV-00008, 2020 WL 13663400, at *2-4 (S.D. Tex. Jan. 23, 2020) (dismissing plaintiff's complaint pursuant to Rule 12(b)(3) because there was a binding arbitration agreement between the parties). The Fifth Circuit has held that "our court has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3)." *Lim v. Offshore Specialty Fabricators, Inc.*, 404

F.3d 898, 902 (5th Cir. 2005) (acknowledging the circuit split but agreeing that Rule 12(b)(3) is the proper vehicle for a dismissal based on an arbitration agreement).

20. "The United States Supreme Court has described an arbitration agreement as a "specialized kind of forum-selection clause." *Rollins*, 2020 WL 13663400, at *2 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Thus, the enforceability of an arbitration agreement, like the enforceability of a forum-selection clause, may be analyzed under Rule 12(b)(3). *See id.*; *see also McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019) (acknowledging that Rule 12(b)(3) is a proper method for seeking dismissal in favor of arbitration).

21. However, because of the conflict in the circuit courts, GoodLeap files this Motion as a Rule 12(b)(3) motion to dismiss or, in the alternative, a Rule 12(b)(1) motion to dismiss. Federal Rule of Civil Procedure 12(b)(3) provides that a party may move for dismissal when venue is improper. Federal Rule of Civil Procedure 12(b)(1) provides that a party may move for dismissal where there is a lack of subject-matter jurisdiction. *See Interactive Flight Technologies, Inc. v. Swissair Swiss Air Transport Co., Ltd.*, 249 F.3d 1177, 1179 (9th Cir. 2001) (citing the Supreme Court's holding in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000), that an order dismissing an action remains a "final decision" within the traditional understanding of that term, notwithstanding that dismissal was in favor of arbitration); *Lewis v. UBS Financial Services Inc.*, 818 F.Supp. 2d 1161, 1165 (N.D. Cal. 2011) ("Where the claims alleged in a pleading are subject to arbitration, the Court may stay the action pending arbitration or dismiss the action."). Rule 12(b)(1) is appropriate for dismissing claims subject to arbitration because it "is a flexible rule" that often serves as a vehicle for raising residual defenses and the Federal Arbitration Act requires only that a party "petition" the court for an order directing arbitration to proceed. *GT*

*Sec., Inc. v. Klastech GmbH*, No. C-13-03090 JCS, 2014 WL 2928013, at *17 (N.D. Cal. June 27, 2014).

22. On either a Rule 12(b)(1) or (3) motion to dismiss, the court may consider other evidence in addition to the complaint and its proper attachments. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *see also Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citations omitted).

23. In any case, because of GoodLeap and Plaintiffs' unambiguous Loan Agreement to arbitrate, venue is improper in this Court and/or this Court also lacks subject-matter jurisdiction. Pursuant to the Loan Agreement, JAMS is the only proper venue with subject-matter jurisdiction over Plaintiffs' claims. GoodLeap requests this Court dismiss Plaintiffs' Complaint and compel them to litigate their claims in an arbitration proceeding.

**B. The Federal Arbitration Act's presumption in favor of arbitration.**

24. The Federal Arbitration Act ("FAA") signifies a strong federal policy in favor of enforcing arbitration agreements.[2] *See* 9 U.S.C. § 2; *Epic Sys. Corp. Jacob Lewis Ernst & Young Stephen Morris Nat'l Lab. Rels. Bd. v. Murphy Oil USA*, 584 U.S. 497, 505 (2018) ("The [FAA], this Court has said, establishes 'a liberal federal policy favoring arbitration agreements.'"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (FAA provisions demonstrate federal policy that favors arbitration and its purpose was to reverse the longstanding judicial hostility to arbitration agreements); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (the FAA's

[2] The FAA applies to the Arbitration Agreement found in the Contract. See Ex. A-1, at § 15. The FAA controls any arbitration agreement "evidencing a transaction involving commerce." 9 U.S.C. § 2. The United States Supreme Court has interpreted "involving commerce" to mean "affecting commerce—words of art that ordinarily signal the broadest possible exercise of Congress' Commerce Clause powers." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). Here, the Loan Agreement evidences a transaction involving commerce such that the FAA applies. Id. at 121. Moreover, the Arbitration Agreement itself leaves no room for debate on this point, as it expressly states that "[t]he foregoing arbitration provisions shall be construed and enforced in accordance with the Federal Arbitration Act . . . ."

"principle purpose . . . is to ensure that private arbitration agreements are enforced according to their terms."). "[I]n Congress's judgment arbitration ha[s] more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Systems*, 584 U.S. at 505; *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (arbitration allows parties to resolve their claims for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes").

25. The FAA permits a party to move to compel arbitration when an opposing party refuses to arbitrate as required by a valid arbitration agreement. *Gilmer*, 500 U.S. at 25; 9 U.S.C. §§ 3, 4. In the Fifth Circuit, courts use a two-prong inquiry to determine whether to compel arbitration. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The two considerations are: (1) whether a valid agreement to arbitrate exists between the parties; and, (2) whether the dispute in question is within the scope of the arbitration agreement. *Webb*, 89 F.3d at 257-58.

26. Where the agreement contains a delegation clause, however, the second prong requires the Court only to ask "whether the agreement contains a valid delegation clause." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *Reyna v. Int'l. Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016). "The only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. A delegation clause "transfer[s] the court's power to decide arbitrability questions to the arbitrator." *Id.* If the court finds that both prongs of this test are met, arbitration is

mandatory. *See Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

27. Both Texas and federal courts have long shown favor toward the enforcement of arbitration agreements. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992). Because of the strong presumption in favor or arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

28. The FAA "leaves no place for the exercise of discretion by a [trial] court but instead mandates that [trial] courts shall direct the parties to proceed to arbitration" on all claims covered under the agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Courts, therefore, should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses*, 460 U.S. at 22. If all issues must be resolved by arbitration, as is the case here,[3] district courts should dismiss rather than stay litigation pending arbitration. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1991*); Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 (5th Cir. 1985).

29. Because the parties' Loan Agreement has a valid arbitration provision, Plaintiffs' claims are within the scope of the arbitration provision and Plaintiffs agreed to administration of the arbitration by JAMS' rules, the Court should dismiss this case and compel Plaintiffs to arbitrate

[3] The Loan Agreement unequivocally states that the dispute resolution provision applies to "[a]ll claims and disputes arising out of or relating to this Agreement . . . ." See Ex. A-1, at § 15.

their claim. In the alternative, the Court should order the parties to arbitrate and stay the instant matter pending completion of that proceeding.

**C. The parties' Loan Agreement contains a valid arbitration provision.**

30. In determining the validity of arbitration agreements which are subject to the FAA, courts apply ordinary state law principles governing the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In this case, Plaintiffs and GoodLeap entered a valid agreement to arbitrate. *See* Ex. A-1, at § 15. Because the Loan Agreement includes an express and unambiguous arbitration provision, the entirety of this action is subject to arbitration.

31. The Loan Agreement Plaintiffs signed mandates "[t]odas las reclamaciones y disputas que surjan de o en relación con este Contrato . . . serán resueltas por arbitraje vinculante de forma individual." Ex. A-1, at § 15 ("All claims and disputes arising out of or in connection with this Agreement . . . will be resolved by binding arbitration on an individual basis."). In return for entering into the Loan Agreement, Plaintiffs received financing for a solar power system. Plaintiffs and GoodLeap, accordingly, have a valid agreement to arbitrate.

**D. The arbitration provision in the Loan Agreement contains a valid delegation clause.**

32. The arbitration provision evidences an intent to delegate the issue of arbitrability through incorporation of the JAMS rules. Because the arbitration provision incorporates a delegation clause, it transfers the court's power to decide arbitrability questions to the arbitrator.

33. "A contract need not contain an express delegation clause," and may incorporate such a clause by reference. *See Petrofac, Inc. v. DynMcDermott Pet. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). "[T]he adoption of specific arbitration rules—such as JAMS—shows that a party knowingly intended to arbitrate gateway issues of arbitrability." *Maravilla v. Gruma Corp.*, 783 Fed. Appx. 392, 396 (5th Cir. 2019) (citing *Rent-A-Ctr., West, Inc. v. Jackson*, 561

U.S. 63, 79 (2010) (parties' intent can be found where "delegation is clear and unmistakable"); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (parties had "expressly adopted" the JAMS rules in their agreement, "present[ing] clear and unmistakable evidence that [they] agreed to arbitrate arbitrability")).

34. The Loan Agreement's arbitration provision unambiguously states that the arbitration will be administered under the JAMS arbitration rules. *See* Ex. A-1, at § 15. By incorporating the JAMS rules, the parties have agreed to delegate the issues of arbitrability or, in other words, to arbitrate arbitrability. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 493 (5th Cir. 2017).

35. The Loan Agreement also expressly delegates arbitrability to the arbitrator. See Ex. A-1, at § 15. Specifically, the Loan Agreement states that "[e]l árbitro también decidirá cualquier asunto relacionado con la elaboración, validez, aplicación o alcance de este acuerdo de arbitraje, [y] susceptibilidad de arbitraje . . . ." Ex. A-1, at § 15 ("The arbitrator shall also decide any issue relating to the construction, validity, enforceability or scope of this arbitration agreement, arbitration susceptibility . . . .").

36. Because the parties entered in to a valid arbitration provision that contains a valid delegation provision, "the court's power to decide arbitrability questions [is transferred] to the arbitrator." *Kubala*, 830 F.3d at 202. The Court should grant GoodLeap's motion and compel arbitration.

**E. Plaintiffs' claims fall within the scope of the arbitration provision.**

37. By executing the Loan Agreement, Plaintiffs agreed to arbitrate all claims that arise from the Loan Agreement. *See* Ex. A-1, at § 15. All of Plaintiffs' claims asserted against GoodLeap arise directly from the Loan Agreement. Because all of Plaintiffs' claims fall within

the arbitration provision, all of Plaintiffs' claims are improperly before this Court. Where all issues before the court are properly subject to arbitration, it is appropriate to dismiss the action, and the Court should dismiss all of Plaintiffs' claims pending in this case and compel arbitration.

38. To the extent the Court determines that claims alleged by Plaintiffs fall outside of the scope of the arbitration provision, the Court should stay the litigation pending the outcome of the parties' arbitration. *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 356 (S.D. Tex. 2008), aff'd and remanded, 583 F.3d 228 (5th Cir. 2009) ("In this case, the claims to be arbitrated and those to be litigated involve many of the same operative facts, and allowing the litigation of the non-arbitrable claims to proceed could have a significant impact on the arbitration. The Court therefore reluctantly concludes that it should stay litigation of Plaintiffs' non-arbitrable claims during the pendency of the parties' arbitration.")).

## IV. CONCLUSION & PRAYER

39. For the foregoing reasons, GoodLeap respectfully requests that this Court dismiss Plaintiffs' Complaint and compel arbitration, or, in the alternative, stay these proceedings pending outcome of arbitration.

Dated: February 21, 2025

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Earl L. Ingle*
**James R. Ray, III**
Texas Bar No. 24079746
SDTX Federal ID No. 1487531
1717 West 6th Street, Suite 250
Austin, Texas 78703
Telephone: 512.391.6100
Facsimile: 512.391.6149
jray@munsch.com

**Earl L. Ingle**
Texas Bar No. 24097234
SDTX Federal ID No. 3219597
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: 713.222.4075
Facsimile: 713.222.1475
eingle@munsch.com

**ATTORNEYS FOR GOODLEAP, LLC**

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned counsel for the Defendant certifies the foregoing document has been filed with the Court and served upon all known counsel of record via the Court's electronic case filing system, email and/or mailed on February 21, 2025:

Abraham Garcia
Carlos A. Saldaila
Kgs Law Group
150 W Parker Rd, Suite 705-B
Houston, Texas 77076
kgs@kgslawgroup.com
***Attorneys for Plaintiffs***
***Donaciano Salinas Lopez and***
***Imelda Hinojosa Lopez***

M. Blake Downey
Scotthulse, P.C.
One San Jacinto Plaza
201 E. Main Dr., Suite 1100
El Paso, Texas 79901
bdow@scotthulse.com
**-and-**
David G. Oliveira
Rene O. Oliveira, Jr.
Roerig, Oliveira & Fisher, LLP
doliveira@rofllp.com
lizg@rofllp.com
10225 N. 10th Street
McAllen, Texas 78504
***Attorneys for Defendant Meraki Solar, LLC***

*<u>/s/ Earl L. Ingle</u>*
Earl L. Ingle