**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **DONACIANO SALINAS LOPEZ AND IMELDA HINOJOSA LOPEZ,** *Plaintiffs,* | § § § § | |
| **v.** | § | **CIVIL ACTION NO. 7:25-CV-00067** |
| **MERAKI SOLAR, LLC., SOLCIUS LLC., KARLA TREVINO, AND GOODLEAP, LLC,** *Defendants* | § § § § § § | |

---

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT GOODLEAP, LLC'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED PETITION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(3) AND 12(b)(1) AND MOTION TO COMPEL ARBITRATION**

---

Plaintiffs Donaciano Salinas Lopez and Imedla Hinojosa Lopez file this Response to Defendant GoodLeap, LLC's Motion to Dismiss Plaintiffs' First Amended Petition Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(1) and Motion to Compel Arbitration. The Court should deny the motion because there is no evidence that Plaintiffs agreed to arbitrate their claims.

## I. Background and Summary of Argument

1. This is a consumer fraud case involving the sale, installation, and financing of a residential solar panel system at the home of Plaintiffs Donaciano Salinas Lopez and Imedla Hinojosa Lopez. Defendant GoodLeap, LLC financed the transaction. The Lopezes brought this suit against GoodLeap alleging that the financing agreement contained undisclosed charges and that GoodLeap was a participant in the fraud committed against them. GoodLeap answered the

suit and filed a motion to dismiss this case and enforce the arbitration clause that was included within the agreement. Doc. No. 3.

2. The Lopezes never saw the financing agreement before the solar panels were installed, the terms were never explained to them, and they never signed the agreement. The salesperson who came to their house did mention a company called GoodLeap, but never told them they would be signing a separate contract with GoodLeap or explained fully GoodLeap's role in the case. The salesperson also did not have them sign the contract with the sales/install company. The Lopezes did not see that contract until it arrived in the mail to them much later. The Lopezes are also not the owners of and have never been the owners of the email addresses identified as their email addresses within the contract with the sales/install company or the financing agreement with GoodLeap. *See* Pltf. Exh. A (unredacted finance agreement); Exh. B (unredacted contract with Solcius); Exh. C (affidavit of Donaciano Salinas Lopez); Exh. D (affidavit of Imelda Hinojosa Lopez). Plaintiffs never signed the financing agreement that contains the arbitration clause that GoodLeap is relying on here to compel arbitration. They never otherwise agreed to arbitration. Because there is no evidence that the parties agreed to arbitrate, then this Court should deny GoodLeap's motion.

3. In the alternative to denying the motion to compel arbitration outright, the Court should permit discovery on the issue of the formation of the contract and enforceability of the arbitration clause. The Court should also conduct a jury trial on the issue. It has authority to do so. *Adebe v. Yum! Brands, Inc.*, 4:21-CV-682, 2024 WL 3891357, 2024 U.S. Dist. Lexis 149558, at *21 (E.D. Tex. 2024); *Trammell v. AccentCare, Inc.*, 776 Fed. Appx. 208, 210 (5th Cir. 2019).

4. If the Court ultimately orders arbitration in this case, Plaintiffs requests that the Court stay rather than dismiss the case. The Supreme Court recently held that "[w]hen a district

court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, section 3 of the FFA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472 (2024). Arbitration is not appropriate in this case, but if the Court orders it then it should stay the litigation rather than dismiss it outright.

## II. Argument and Authorities

### A. The Lopezes never agreed to arbitrate any disputes with GoodLeap.

#### i. Formation of a valid arbitration agreement under the FAA.

5. The parties agree that the Federal Arbitration Act applies to the arbitration clause here. *See* Doc. No. 3, fn. 2. Under the FAA, arbitration agreements are as enforceable as other contracts, but not more so. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "The federal policy is about treating arbitration contracts like all others—not about fostering arbitration." *Id.* "Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal citations omitted) (emphasis in original).

6. Determining whether a party should be compelled to arbitrate claims requires a two-step inquiry. *Gezu v. Charter Communs.*, 17 F.4th 547, 552-53 (5th Cir. 2021). Step one focuses on contract formation—whether the parties entered into any arbitration agreement at all. *Id.* Step two involves contract interpretation to determine whether this claim is covered by the arbitration agreement. *Id.* Texas law governs this analysis. *Id.*

7. The party moving to compel arbitration must show that the agreement meets all of the requisite contract elements. There is no valid arbitration agreement if the Lopezes did not sign the contract. *See Prevost v. Burns Int'l Sec. Servs. Corp.*, 126 F.Supp.2d 439, 441 (S.D. Tex. 2000) ("Thus, if Plaintiff did not sign the Arbitration Agreement, it obviously cannot be valid); *see also*

*Fuller v. Healthcare Servs. Grp., Inc.* No. , 2018 U.S. Dist. Lexis 221898, at *7-8 (N.D. Tex. 2018) ("No valid arbitration agreement exists if [plaintiff] did not sign the acknowledgement."). The burden of proof is on the movant and is preponderance of evidence. *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012).

8. Here, the analysis should not advance to step two. There is no agreement to arbitrate. The affidavit from Donaciano Salinas Lopez explains the actions of the salesperson in effecting the transaction with the Lopezes and how they were never presented with or signed the loan agreement, that arbitration was never discussed or agreed to, and that Loanpal/GoodLeap's name was never mentioned except in passing.

**ii. The Lopezes never signed a contract with an arbitration agreement and never agreed to arbitration.**

9. The Lopezes own their home at 15 Garay Lane, Rio Grande City, Texas. They were approached at their home by a salesperson who worked for Solcius/Meraki and who was selling solar panel systems that would provide power to homes in lieu of power provided by energy companies. The salesperson made several representations to the Lopezes. Most significantly, the salesperson told the Lopezes that they would no longer need to purchase electricity from a power company and that the solar panel system would fully power their home. If they bought the solar panel system, the only bill they would have would be the bill for solar panels. They would own their own power source. Based on the representations made to them, the Lopezes agreed to purchase the system for their home. The Lopezes never signed either a contract with the sales company or a contract with Loanpal/GoodLeap. The salesperson never presented them with a contract. The Lopezes did agree to purchase the system and do remember hearing the name Loanpal, but they never saw or signed a contract with either company. The salesperson never explained the role of Loanpal/GoodLeap. The Lopezes believed that they would simply be making

payments to the sales company to pay off the system. They were never shown a contract. They never signed either a hard copy or electronic contract. They believe the salesperson signed the contract on their behalf. These facts are sworn to by affidavits from the Lopezes. Exh. C.

10. The Lopezes received a copy of the Solcius contract in the mail only after the transaction with the salesperson occurred. They never received a copy of the Loanpal/GoodLeap contract. *Id.*

**iii. GoodLeap offered no evidence that the parties agreed to arbitration.**

11. The evidence proffered by the Lopezes here supports the conclusion that there is no agreement to arbitrate. GoodLeap, as the party with the burden of proof in this proceeding, does not have any creditable evidence that the Lopezes signed the financing agreement documents it signed with the Court.

12. The affidavit from a GoodLeap Vice President conclusively stated that "Plaintiffs executed a Loan Agreement with Loanpal," but the evidence that supposedly supports that conclusion discusses only the process that is followed generally by GoodLeap customers when signing financing contracts with GoodLeap. For example, in paragraph six of the VP's affidavit she states that, "In the event a potential customer expresses interest in moving forward with financing the purchase of a home solar system, the customer has the ability to complete an application for financing via GoodLeap's internet-based application process." Doc. 3-1, ¶ 6. The paragraph then goes on to describe the information GoodLeap obtains from the customer and what information the customer provides. *Id.* She never says that the Lopezes completed the application or took any of those actions in this case. Similarly, in paragraph eight of that affidavit, the VP states that "the customer can click a link within the subject email to proceed to the signing of the Loan Agreement." *Id.* at ¶ 8. She never says the Lopezes actually clicked the link or signed the

loan agreement. She is unable to testify to facts related to the execution of the agreement containing the arbitration clause.

13. In paragraph 12 of the affidavit, she does affirmatively state that "The Loan Agreement in this case was executed by Plaintiffs via DocuSign July 29, 2020." *Id.* at ¶ 12. But her citation for this fact is the DocuSign certificate that identifies an email address that the Lopezes have never owned or used. The VP does not have personal knowledge of execution of the documents, what the Lopezes agreed to or didn't agree to in this case, or what was said or done by the salesperson who acted on behalf of GoodLeap.

14. GoodLeap has produced no creditable evidence before this Court that the Lopezes signed the agreement proffered to the Court by GoodLeap. There is no evidence of an agreement to arbitrate between these parties. The movant has the burden to prove up the existence of an arbitration agreement and GoodLeap cannot carry it. The motion to compel arbitration should be denied and the case should proceed to litigation.

**iv. There is no ratification of the arbitration agreement and GoodLeap is not a third party beneficiary to an arbitration clause in the Solcius contract.**

15. In anticipation that GoodLeap will raise alternative bases for the Court to order arbitration beyond what it asserted in its original motion, even in the absence of evidence of an agreement to arbitrate, the Lopezes will address two of those anticipated alternative bases: ratification and third party beneficiary. Ratification is not a legitimate basis to enforce an agreement to arbitrate under the circumstances presented in this case. A party ratifies an agreement when—after learning all of the material facts—he confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated. Thus, to establish ratification, the following must be proved: (1) approval by act word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intent to validate the earlier act. *White v. Harrison*, 390

S.W.3d 666, 672 (Tex. App.—Dallas 2012, no pet.). The party claiming ratification has the burden to prove all of these elements. *Wiggins v. Smith*, No. 13-16-00296-CV, 2018 WL 2057246, 2018 Tex. App. Lexis 3118, at *13 (Tex. App.—Corpus Christi 2018, no pet.). This includes the burden to prove the ratifying party acted upon full knowledge of all material facts. *Bank of America, N.A. v. Prize Energy Resources, L.P.*, 510 S.W.3d 497, 505 (Tex. App.—San Antonio 2014, pet. denied); *Land Title Co. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). Conduct without full knowledge or intent cannot amount to ratification. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 488 (Tex. App.—Dallas 2007, pet. denied).

16. The only action taken by the Lopezes that could arguably be considered ratification would be payment of his bill for the solar panel system. This action would, at most, be considered ratification of an agreement to pay for the product purchased and the installation of that product. It would not amount to ratification of an arbitration clause, which is not necessary to a contract to pay for a solar panel system, nor would it be expected by a consumer or any party who had not seen the contract or otherwise been made aware that it contained an arbitration clause. Ratification does not allow the party seeking enforcement to impose on the other every advantageous term that the party would have insisted on had it been given the chance. There was no notice, constructive or otherwise, that the Lopezes' acceptance of the product and installation in exchange for their payment carried with it arbitration and waiver of their rights to a jury trial. Ratification requires full knowledge and that cannot be shown here. Further, there is no evidence that they received notice of the existence of an arbitration clause in the Solcius contract at a time when they could have done anything about it. The Solcius contract was mailed to them later. Exhs. B and C.

17. GoodLeap is also not a third party beneficiary under the Solcius contract such that it could enforce an arbitration clause present in that contract. Under Texas law, "[a] court will not

create a third-party beneficiary contract by implication." *MCI Telecomms. Corp. v. Texas*, 995 S.W.2d 647, 651 (Tex. 1999). A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to the third party, and only if the contracting parties entered into the contract directly for the third party's benefit. *Id.* "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third party beneficiary.'" *In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 456-57 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The intention to confer.a direct benefit to a third party "must be clearly and fully spelled out or enforcement by the third party must be denied. *Id.* (citing *MJR Corp. v. B&B Vending Co.*, 760 S.W.2d 4, 16 (Tex. App.—Dallas 1988, writ denied). Where the contract does not name a party as a beneficiary under the contract or express that the party has a right to enforce it, then the presumption against vesting a right of enforcement in a non-signatory is not overcome. *Id.*; *see MCI Telecomms*, 995 S.W.2d at 652 (stating presumption against third party beneficiary status). Such is the case here with GoodLeap. Loanpal/GoodLeap is not named as a beneficiary or provided a right to enforce the arbitration clause in Solcius's contract.

18. GoodLeap would be considered a "creditor beneficiary" of the Solcius contract, if anything, which is one to whom the performance promised will come in satisfaction of a legal duty owed by the promisee. *Id.* (citing *MCI Telecomms*, 995 S.W.2d at 651). To qualify as a creditor beneficiary, the maker of the contract must not only have intended to confer a benefit upon the third party, but must have intended for the third party to have the right to enforce the agreement. *Id.* (citing *MJR Corp.*, 760 S.W.2d at 16. Unless the agreement expresses both intents, the third party remains no more than an incidental beneficiary. *Id.* The cases where a third party beneficiary or other nonsignatory can compel arbitration involve contractual terms that expressly include the

beneficiary or provide for enforcement by a third party or class of third parties. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 383 (5th Cir. 2008) (enforcing arbitration where contract included agreement to arbitrate against nonsignatories whose "relationships…result from the agreement."); *In re Rubiola*, 334 S.W.3d 220, 224-25 (Tex. 2011) (arbitration agreement expressly provided that certain non-signatories were considered parties and therefore such parties could compel arbitration under the agreement). There is no expressed intention to benefit GoodLeap and certainly no expressed intention to have GoodLeap enforce the contract. The arbitration clause in the Solcius contract does not provide that anyone else is a party or could enforce the agreement. Loanpal/GoodLeap is not mentioned in the contract. It cannot enforce the Solcius agreement, or its arbitration clause, as a third party beneficiary under the facts of this case.

**B. If it does not deny the Motion to Compel Arbitration, the Court should order discovery and conduct a jury trial on the issue.**

19. The Court should deny GoodLeap's motion to compel arbitration outright. It has not proven the existence of an agreement between the parties to arbitrate. Alternatively, if the Court does not deny the motion, Plaintiffs move the Court to order discovery on the existence and formation of an agreement to arbitrate. Although courts in the Fifth Circuit have generally denied arbitration-related discovery absent a compelling showing such discovery is required, when there is an issue raised that goes to the very existence of the arbitration agreement then courts have allowed arbitration-related discovery as to that issue. *Byars v. Asbury Mgmt. Servs., LLC*, 2020 WL 127989, 2020 U.S. Dist. Lexis 4796 (S.D. Miss. 2020); *see Banks v. Cavalier Homes, Inc.*, No. 3:23-CV-28, 2024 WL 13135859, 2024 U.S. Dist. Lexis 54974, at *22-23 (N.D. Miss. 2024) (the court "harbor[ed] concerns as to the circumstances" surrounding the agreement and ordered discovery even though no party requested it); *Adebe v. Yum! Brands, Inc.*, 4:21-CV-682, 2024 WL 3891357, 2024 U.S. Dist. Lexis 149558, at *21 (E.D. Tex. 2024) (finding additional discovery

necessary when there are plausible ways in which the electronic signature of plaintiff could have been forged); *see also Beverly Enterprises-Miss. V. Powell*, 244 Fed. Appx. 577 (5th Cir. 2007) (remanding nursing facility case for resolution of conflicting depositional evidence taken in discovery concerning enforceability of arbitration agreement).

20. If ordered, Plaintiffs request discovery on the following matters: (1) the salesperson's authority to offer financing on behalf of GoodLeap; (2) the procedures, guidelines, and processes that GoodLeap requires the salesperson to follow in offering, explaining, and completing the financing documents, and whether those procedures, guidelines, and processes were followed in this case; (3) GoodLeap's training of sales staff, if any; (4) GoodLeap's contracts, agreements, and relationship with the sales/install companies, Solcius and Meraki Solar, and their sales and other customer-facing staff; (5) the execution of the financing documents in this case; (6) communications between the salesperson, Solcius, Meraki Solar, and Plaintiffs, or any of these parties, regarding GoodLeap's contract; (7) GoodLeap's process for ensuring due execution of documents by the customer, including all audit trails and logs from DocuSign, and whether GoodLeap's process was followed here.

21. This discovery should be accomplished via targeted requests for production and a deposition of a GoodLeap representative on topics corresponding with the discovery matters identified above. A deposition of the salesperson would also be appropriate if he can be found and compelled to attend. A subpoena to Google that sought information collected by Google about the user who created the email addresses stated in the contract and when the email address was created would also be valuable information here.

22. Plaintiffs request a jury trial on the issue of the existence of an arbitration agreement. The FAA directs that "[i]f the making of the arbitration agreement or the failure,

neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C.§ 4 "A district court must hold a trial on the existence of an arbitration agreement if the making of the arbitration agreement is in issue." *Trammell v. AccentCare, Inc.*, 776 Fed. Appx. 208, 210 (5th Cir. 2019) (cleaned up); *see Beverly Enterprises-Miss.*, 244 Fed. Appx. 577 (5th Cir. 2007) (remanding nursing facility case for trial on arbitration agreement). Where a jury trial is warranted, the proper course is to deny a pending motion to compel arbitration without prejudice to its resubmission on request following the required hearing. *Adebe*, 2024 WL 3891357, 2024 U.S. Dist. Lexis 149558, at *22. If the Court does not deny the motion to compel arbitration outright, then the Lopezes moves the Court to permit the discovery identified in this brief and requests a jury trial on the issue of whether there is a valid agreement to arbitrate.

**C. If the Court orders arbitration, it should stay rather than dismiss the lawsuit.**

23. The law and evidence combine here to lead to the conclusion that the motion to compel arbitration should be denied. If the Court disagrees, it should stay rather than dismiss this litigation. Section 3 of the FAA states that if the Court determines that a matter should be referred to arbitration, then the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. The United States Supreme Court recently held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, section 3 of the FFA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472 (2024). The district courts in the Southern District have faithfully followed this directive. *See, e.g., Gillon v. UCB Inc.*, No. 4:24-CV-01418, 2024 WL 4829503, 2024 U.S. Dist. LEXIS 209751, at *12 (S.D. Tex. Nov. 19, 2024); *Hillary v. Love's Travel Stops &*, No. 7:23-CV-00409, 2024 WL 4369720, 2024 U.S.

Dist. LEXIS 178438, at *5 (S.D. Tex. Sept. 30, 2024) ("After *Smith v. Spizzirri*, courts no longer have the discretion to dismiss a case when one party requests a stay pending arbitration.").

24. In light of the text of section 3 of the FAA and the recent Supreme Court precedent that is directly on point, Plaintiffs request a stay of this case pending arbitration if this Court determines arbitration is appropriate.

## III. Prayer

Plaintiffs respectfully request that the Court deny Defendant GoodLeap, LLC's Motion to Dismiss Plaintiff's Original Petition Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(1) and Motion to Compel Arbitration. Alternatively, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Discovery on the Arbitration Agreement. Plaintiffs also pray for all other relief, both general and special, at law or in equity, to which Plaintiffs are entitled.

Respectfully Submitted,

**KGS LAW GROUP**

By: /s/ Brandon A. Kinard
**Brandon A. Kinard**
State Bar No. 24079744
S.D. Tex. Bar No. 2707742
150 W Parker Rd, Suite 705-B
Houston, Texas 77076
Telephone No. (281) 962-7772
Facsimile No. (281) 962-7773
E-Service and Correspondence Email: kgs@kgslawgroup.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded Defendant(s), all counsel of record, and/or parties on the 14th day of March 2025 pursuant to the Federal Rules of Civil Procedure.

*/s/ Brandon A. Kinard*
**Brandon A. Kinard**