UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DONACIANO SALINAS LOPEZ and IMELDA HINOJOSA LOPEZ, | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 7:25-CV-00067 |
| MERAKI SOLAR, LLC, SOLCIUS, LLC, KARLA TREVINO, and GOODLEAP, LLC, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Donaciano Salinas Lopez and Imelda Hinojosa Lopez (the "Lopezes") purchased solar panels for their Rio Grande City home in 2020. Defendant GoodLeap, LLC ("GoodLeap")[1] financed the purchase and claims that the Lopezes are bound by a loan agreement with an arbitration clause. The Lopezes say that they never signed the agreement and didn't even know about it until this litigation. GoodLeap now moves to compel arbitration based on that agreement. GoodLeap argues that even if the Lopezes never signed it, they are estopped from denying its terms because they accepted the benefits of GoodLeap's financing.

GoodLeap has filed a Motion to Dismiss Plaintiff's First Amended Petition Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(1) and Motion to Compel

---

[1] Formerly Loanpal, LLC.

Arbitration. (Dkt. No. 3). For the reasons below, the Court **DENIES** the Motion without prejudice and orders limited discovery on contract-formation issues.

I.      BACKGROUND

The Lopezes purchased solar panels for their Rio Grande City home. (Dkt. No. 5-1 at 37). The transaction involved financing from GoodLeap, a company formerly known as Loanpal, (Dkt. No. 3 at 1) (citing Dkt. No. 3-3 at 1–2), that provides loans for solar-panel purchases, (Dkt. No. 1-7 at 4). According to GoodLeap, the Lopezes entered into both a purchase agreement with the seller and a separate loan agreement with GoodLeap to finance the purchase. (Dkt. No. 3 at 2). GoodLeap contends that the Lopezes executed the loan agreement electronically through DocuSign on July 29, 2020, using the two email addresses listed on the documents. (*Id.* at 2–3); (Dkt. 3-2); (Dkt. No. 3-5 at 1–2).

The Lopezes tell a different story. In sworn declarations, they state that a door-to-door salesperson came to their home and represented that the solar-panel system would fully power their home and eliminate the need to buy electricity. (Dkt. No. 5-1 at 37–38, 41). They agreed to purchase the system. (*Id.* at 37–38). But they claim that the salesperson never presented them with any contract to sign. (*Id.* at 38, 41). Although the salesperson mentioned "Loanpal" in passing, the Lopezes believed that they would be making payments directly to the solar-panel company and were unaware that a separate financing company was involved. (*Id.*). The salesperson never mentioned arbitration. (*Id.*).

The Lopezes state that they received a copy of the purchase agreement in the mail after the installation was complete. (*Id.* at 38). But they claim that they never received a

copy of the loan agreement and did not learn of its existence until this case. (*Id.* at 38, 41). They also declare that they do not own the email addresses listed on either contract. (*Id.* at 38, 42). According to the Lopezes, the salesperson may have executed these electronic agreements without their knowledge. (Dkt. No. 5 at 5).

The loan agreement contains an arbitration clause requiring that all claims and disputes arising out of or relating to it be resolved through binding arbitration administered by Judicial Arbitration and Mediation Services, Inc.[2] ("JAMS"). (Dkt. No. 3-2 at 8). GoodLeap argues that even if the Lopezes never signed the loan agreement, they ratified its terms by accepting the benefits of GoodLeap's financing. (Dkt. No. 6 at 3–6).

The Lopezes sued multiple defendants in state court, alleging civil conspiracy, violations of the Truth in Lending Act, fraudulent liens, and respondeat superior liability. (Dkt. No. 1-7 at 5–10). GoodLeap removed the case to federal court, (Dkt. No. 1), where it moved to compel arbitration based on the loan agreement, (Dkt. No. 3).

## II.   LEGAL STANDARDS

"Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, courts must determine whether the parties agreed to arbitrate the

---

[2] In its original form, the arbitration clause in the alleged loan agreement states: "Todas las reclamaciones y disputas que surjan de o en relación con este Contrato . . . serán resueltas por arbitraje vinculante de forma individual." (Dkt. No. 3-2 at 8). GoodLeap's proffered translation provides that the Parties agreed to arbitrate "[a]ll claims and disputes arising out of or in connection with this Agreement." (Dkt. No. 3 at 6).

dispute.  *Id.*  Second, courts consider whether any federal statute or policy renders the claims not arbitrable.  *Id.*

At the first step, courts ask two questions: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the parties' dispute falls within the scope of that arbitration agreement.  *Id.*

The party moving to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence.  *Grant v. Houser*, 469 F.App'x 310, 315 (5th Cir. 2012) (per curiam).  In determining whether an agreement exists, courts "apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

Once "competent evidence showing the formation of an agreement to arbitrate has been presented," the party resisting arbitration must "produce *some* contrary evidence to put the matter 'in issue.'"  *Gallagher v. Vokey*, 860 F.App'x 354, 357–58 (5th Cir. 2021) (per curiam) (emphasis in original) (quoting 9 U.S.C. § 4).  To put the arbitration agreement "in issue," *see* 9 U.S.C. § 4, the resisting party must (1) unequivocally deny that he agreed to arbitrate and (2) produce some evidence to support this assertion, *Gallagher*, 860 F.App'x at 357.  Pleadings alone do not satisfy the some-evidence standard.  *Id.* at 358.  Rather, "[e]vidence presented to compel or resist arbitration must be competent summary judgment evidence."  *Hillary v. Love's Travel Stops & Country Stores, Inc.*, No. 7:23-CV-00408, 2024 WL 4369720, at *2 (S.D. Tex. Sept. 30, 2024) (alteration in original) (quoting *Intermed Servs. Mgmt. Co. v. Horseshoe, LLC*, 690 F.Supp.3d 647, 651 (N.D. Tex. 2023), *appeal dismissed sub nom. Intermed Servs. Mgmt. Co., L.P. v. Horseshoe, LLC*, No. 23-

11028, 2024 WL 1484006 (5th Cir. Mar. 26, 2024), *and vacated sub nom. Intermed Servs. Mgmt. Co., L.P. v. Horseshoe, LLC*, No. 3:22-CV-00145, 2024 WL 4554709 (N.D. Tex. Mar. 29, 2024)); *see Gallagher*, 860 F.App'x at 358.

"The second [step] involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). The second step is also a matter of law for the court to decide, *id.*, unless the parties agreed to let the arbitrator decide arbitrability, *Kaplan*, 514 U.S. at 943–44, 115 S.Ct. at 1923–24. Courts presume that the parties' disputes are "arbitrable unless it is clear that the arbitration clause has not included them." *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 303 (5th Cir. 2021) (quoting *Kaplan*, 514 U.S. at 945, 115 S.Ct. at 1924–25). Thus, the party resisting arbitration bears the burden of proving that the dispute is not arbitrable. *Id.*

If the court determines that both steps are satisfied, it must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. After *Smith v. Spizzirri*, courts no longer have discretion to dismiss a case when one party requests a stay pending arbitration. 601 U.S. 472, 478, 144 S.Ct. 1173, 1178, 218 L.Ed.2d 494 (2024).

### III.   DISCUSSION

GoodLeap's arguments present two questions. First, have the Lopezes produced enough evidence to put the formation of the loan agreement—and its arbitration clause— "in issue"? 9 U.S.C. § 4. Second, even if the Lopezes didn't sign the loan agreement, are

5

they still bound by its arbitration clause because they accepted the benefits of GoodLeap's financing? The answer to the first question is yes; the answer to the second is no.

The Lopezes' sworn declarations unequivocally denying that they signed the loan agreement meet the some-evidence standard and put formation in issue. (Dkt. No. 5-1 at 37–42); *see Chester v. DirecTV, LLC*, 607 F.App'x 362, 364 (5th Cir. 2015) (per curiam) ("[T]he making of the arbitration agreement was properly in issue because . . . Chester unequivocally denied making it and produced an affidavit providing as such."); *Allen v. Vaksman L. Offs., P.C.*, 822 F.App'x 315, 316 (5th Cir. 2020) (per curiam) ("Allen has raised an issue of fact, albeit slim, by unequivocally denying, in his (self-serving) affidavit, the formation of an arbitration agreement.").

Additionally, GoodLeap's ratification theory fails. The Fifth Circuit requires, at a minimum, knowledge of the contract's existence. *See IMA, Inc. v. Columbia Hosp. Med. City at Dall., Subsidiary L.P.*, 1 F.4th 385, 392 (5th Cir. 2021). And the Lopezes declare that they did not know the loan agreement existed. (Dkt. No. 5-1 at 37–42).

Because these factual disputes cannot be resolved on the current record, the Court denies the Motion without prejudice and orders limited discovery on these issues.

### A.   THE LOPEZES' DECLARATIONS PUT FORMATION IN ISSUE

GoodLeap has introduced competent evidence showing the formation of an agreement: an electronically signed document with a DocuSign certificate, (Dkt. No. 3-5), supported by a declaration from a records custodian. (Dkt. Nos. 3-1). The burden thus shifts to the Lopezes to put formation "in issue." 9 U.S.C. § 4; *Gallagher*, 860 F.App'x at

357–58. To do so, they must "(1) unequivocally deny that [they] agreed to arbitrate; and (2) produce some evidence to support this assertion." *Gallagher*, 860 F.App'x at 357.

The Lopezes have done both. Their sworn declarations unequivocally deny signing the loan agreement. Mr. Lopez states: "We did not sign an arbitration agreement and were never shown an arbitration agreement." (Dkt. No. 5-1 at 38). Mrs. Lopez agrees: "We did not sign either the contract with Solcius or Loanpal/GoodLeap. We were never even shown those documents. The salesperson did not mention arbitration or show us an arbitration agreement. We never agreed to arbitrate." (*Id.* at 41). These statements are unequivocal denials. *See Chester*, 607 F.App'x at 364 ("I am sure I did not sign an arbitration agreement."); *Acosta v. Odle Mgmt. Grp., LLC*, No. 3:19-CV-00265, 2020 WL 4060782, at *4 (W.D. Tex. July 20, 2020).

The declarations also constitute competent evidence. Courts in this circuit have consistently held that sworn denials suffice to put formation in issue. *See e.g.*, *Allen*, 822 F.App'x at 316; *Chester*, 607 F.App'x at 364; *Acosta*, 2020 WL 4060782, at *4. This is so even when the opposing party produces electronically signed documents. *See, e.g.*, *Abebe v. Yum! Brands, Inc.*, No. 4:23-CV-00682, 2024 WL 3891357, at *7 (E.D. Tex. Aug. 21, 2024); *Rosales v. Coca-Cola Sw. Beverages LLC*, No. 3:18-CV-00361, 2019 WL 1493359, at *6 (W.D. Tex. Apr. 3, 2019). As *Rosales* explained, when a defendant swears that the plaintiff "electronically acknowledged an arbitration agreement and has a business record to support its version of the facts," but the plaintiff testifies under oath that "he never saw, acknowledged, or signed any arbitration agreement" a "fact issue exists, and the evidence

7

proffered by each party goes to the weight and credibility of that party's version of the facts." 2019 WL 1493359, at *6.

Accordingly, the Lopezes have satisfied their burden of putting the existence of the arbitration agreement in issue. *Gallagher*, 860 F.App'x at 357. Because genuine disputes of material fact exist, the Court orders limited discovery on formation—including the circumstances of the alleged electronic execution and the Lopezes' ownership of the email addresses listed on the DocuSign certificate. If disputes remain, the Court will conduct a summary trial as required by the Federal Arbitration Act. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").

### B. GOODLEAP'S THEORIES OF NON-SIGNATORY OBLIGATION FAIL.

GoodLeap argues in the alternative that, even if the Lopezes did not sign the loan agreement, they are bound to its arbitration clause as non-signatories. The Fifth Circuit recognizes two ways a non-signatory can bind themselves to a contract containing an arbitration clause: "(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). "Texas's application of direct benefits estoppel is consistent with federal law." *IMA, Inc.*, 1 F.4th at 391 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134–35 (Tex. 2005)).

Neither theory applies here. The first "requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause," *Noble Drilling*, 620

8

F.3d at 474, and—more recently—knowledge of the contract's "basic terms," *IMA, Inc.*, 1 F.4th at 392 (quoting *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 292 (5th Cir. 2015)).  The Lopezes declare that they were never shown the loan agreement and didn't know of its existence or GoodLeap's role in the transaction.  (Dkt. No. 5-1 at 38, 41).  And GoodLeap has not shown that the Lopezes had actual knowledge of the contract, much less its basic terms.[3]

The second theory also fails.  GoodLeap has not shown that the Lopezes are suing "to enforce certain terms" of the loan agreement or that their claims "can only be determined by reference to" it.  *Noble Drilling*, 620 F.3d at 475.  GoodLeap asserts only that the Lopezes' "Truth in Lending claims against GoodLeap are based upon the Loan Agreement they are now contesting."  (Dkt. No. 6 at 2) (emphases omitted).  But "[t]he Truth in Lending Act is a disclosure law."  *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir. 1982) (citation modified) (quoting *Burgess v. Charlottesville Savings & Loan Ass'n*, 477 F.2d 40, 44-45 (4th Cir. 1973)).  As pled, the Lopezes' Truth in Lending claims do not reference the loan agreement or its terms.  (Dkt. No. 1-7 at 9).  And GoodLeap has not explained how the Lopezes are attempting to enforce the agreement in a way that would bind them to its arbitration clause.

---

[3]  Although GoodLeap frames its argument as direct-benefits estoppel, to the extent it also invokes ratification—a doctrine usually confined to agency situations—the argument fails for the same reason: ratification requires actual knowledge of the contract.  *See Willis v. Donnelly*, 199 S.W.3d 262, 273 (Tex. 2006) ("Generally, ratification is a doctrine of agency law, and allows a principal to be bound by an agent's unauthorized contract in circumstances where the principal becomes aware of the contract and retains benefits under it."); *Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 842 (Tex. App.—Dallas 2013, no pet.) ("In order for ratification to be applicable it must be shown that the person ratifying did so with knowledge of the facts.").

9

In short, GoodLeap has not established that the Lopezes are bound as non-signatories. *Noble Drilling*, 620 F.3d at 473.

## IV. CONCLUSION

For the reasons above, GoodLeap's Motion to Dismiss Plaintiff's First Amended Petition Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(1) and Motion to Compel Arbitration, (Dkt. No. 3), is **DENIED without prejudice**. The Parties may conduct limited discovery on contract-formation issues for a period of 60 days from the date of this order. If necessary after discovery, the Court will conduct a summary trial on the formation issue as required by the Federal Arbitration Act. 9 U.S.C. § 4.

It is SO ORDERED.

Signed on September 26, 2025.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**